W. Howard McCORMACK, an
Individual, Appellant,

v.

The OKLAHOMA PUBLISHING COMPA-
NY, a Delaware Corporation, and Jack
Taylor, an Individual, Appellees.

No. 52564.

Supreme Court of Oklahoma.

June 24, 1980.

John S. Odell, Wm. L. Peterson, Jr., Raymond E. Tompkins, of Hanson, Peterson, Tompkins, Buchanan & Odell, Inc., Oklahoma City, for appellant.

Pierson, Ball & Dowd, David Machanic and Michael Minnis, Oklahoma City, for appellees.

DOOLIN, Justice:

By court decision, Oklahoma already recognizes a limited cause of action in tort founded on invasion of privacy. *Munley v. ISC Financial House, Inc.*, 584 P.2d 1336 (Okl.1978) applied the Restatement of the Law of Torts § 652, its standards and definitions, to an action based on creditor harassment. In addition 21 O.S.1971 § 839.1 prohibits *appropriation* for one's own benefit of another's name or likeness and makes such appropriation a misdemeanor. Section 839.2 provides a cause of action for damages resulting from the appropriation.[1]

---

1. § 839.1 Right of privacy—Use of name or picture for advertising without consent—Misdemeanor.—Any person, firm or corporation that uses for the purpose of advertising for the sale of any goods, wares or merchandise, or for the solicitation of patronage by any business enterprise, the name, portrait or picture of any person, without having obtained, prior or subsequent to such use, the consent of such person, or, if such person is a minor, the consent of a parent or guardian, and, if such person is deceased, without the consent of the surviving spouse, personal representatives, or that of a majority of the deceased's adult heirs, is guilty of a misdemeanor.

§ 839.2 Right of action—Damages.—Any person whose right of privacy, as created in Section 1 hereof, is violated or the surviving spouse, personal representatives or a majority of the adult heirs of a deceased person whose name, portrait, or picture is used in violation of Section 1 hereof, may maintain an action against the person, firm or corporation so using such person's name, portrait or picture to prevent and restrain the use thereof, and may in the same action recover damages for any injuries sustained, and if the defendant in such action shall have knowingly used such person's name, portrait or picture in such manner as is declared to be unlawful, the jury or court, if tried without a jury, in its discretion may award exemplary damages.

In the present case a different form of invasion of privacy is involved. Appellant, McCormack, filed suit against defendants, alleging certain facts, submitted as sufficient to state a cause of action based on invasion of privacy.[2] The trial court was of the opinion the tort action for invasion of privacy alleged by appellant was not yet recognized in the State of Oklahoma; it sustained defendants' demurrer based on failure to state a cause of action. Appellant appeals.

 The Restatement of Torts 2d § 652A sets forth four distinct categories of invasion of privacy. These are as follows:

(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

(2) The right of privacy is invaded by

(a) unreasonable intrusion upon the seclusion of another.

(b) appropriation of the other's name or likeness.

(c) unreasonable publicity given to the other's private life.

(d) publicity that unreasonably places the other in a false light before the public.

*Munley v. ISC Financial House, Inc., supra,* was based on section (a), intrusion. The present suit attempts to allege invasion through section (c), unreasonable publicity given to private facts, and (d), publicity placing appellant in a false light.

The alleged invasion was contained in a newspaper article written and published by defendants in the Sunday Oklahoman, a newspaper with a weekly circulation of over 300,000. The offending story related certain facts, as follows:

"McCormack (appellant), a one-time gambler and illegal casino operator in Oklahoma City, has been listed by the Justice Department as an organized crime principal subject, a listing usually reserved for Mafia members and their associates.

"McCormack denied ever having any business dealings with any Mafioso 'that I know of' and denied any such current associations.

"'They're liable to list anybody on there (the Attorney General's Organized Crime Principal Subject list),' McCormack said.

"McCormack said after The Oklahoman reported the government's listing in September, he asked the Justice Department for a copy of his 'rap' sheet to see how many times he had been arrested.

"'Two of them on there weren't even me,' McCormack said.

"(The other 18 entries between 1934 and 1957 apparently were. They range from forgery and swindling to gambling and liquor violations)."

Appellants' first amended petition reads in part:

"Taylor and OPUBCO knew or should have known that the Plaintiff did not want these incidents and unproven allegations from his early life brought to public attention and by such composition and publication, TAYLOR and OPUBCO have unreasonably invaded the Plaintiff's right of privacy by specifically identifying the Plaintiff with these incidents and allegations, most of which occurred in excess of twenty (20) years before said publication.

### XI.

As a direct and proximate result of the composition and publication by TAYLOR and OPUBCO, the Plaintiff has suffered public scorn and ridicule, the contempt of his friends, extreme embarrassment and humiliation, and severe mental distress, all to his damage in the sum of Two Million Dollars ($2,000,000.00).

### XII.

The printing, publication and circulation of the articles set forth above was malicious and unwarranted and such actions were done by TAYLOR, acting

---

2. Appellant dismissed his first cause of action based on libel.

through OPUBCO and with its knowledge and under its direction, with such recklessness and carelessness as to amount to a wanton disregard of the rights of Plaintiff and an indifference to the infliction of injury on Plaintiff or with such gross negligence and total disregard of the consequence of said acts by TAYLOR and OPUBCO that such conduct of TAYLOR and OPUBCO is malicious and totally without justification or excuse, and, by reason thereof, Plaintiff is entitled to exemplary or punitive damages in the sum of One Million Dollars ($1,000,000.00)."

Oklahoma on other occasions has adopted a new tort by court decision rather than by statute even though the tort was not previously recognized in Oklahoma.[3] 23 O.S.1971 § 3 [4] is broad enough to cover a neoteric cause of action not present when the common law was adopted.

■ Although there was no distinctive tort of invasion of privacy in early common law, it has evolved in most jurisdictions based on common law principles sometimes compared to trespass.[5] It is unnecessary for the Legislature to enact a law to create this tort in abrogation of the common law. The common law, followed in Oklahoma, refers not only to the ancient unwritten law of England, but also to that body of law created and preserved by decisions of courts.[6] The common law is not static, but is a dynamic and growing thing and its rules arise from the application of reason to the changing conditions of society.[7] Flexibility and capacity for growth and adaptation is its peculiar boast and excellence.[8]

By our decision today, we expand *Munley v. ISC Financial House, Inc., supra,* and recognize the tort of invasion of privacy in all four categories as set out in the Restatement.

The elements of invasion of privacy based on divisions (c) and (d) of the Restatement are as follows:

(c): "Publicity Given to Private Life

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

(a) would be highly offensive to a reasonable person, and

(b) is not of legitimate concern to the public."

(d): "Publicity Placing Person in False Light

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

■ Under category (c), the disclosure must be public disclosure [9] and the facts must be private [10] and not of legitimate

---

**3.** *Christian v. American Home Assurance Co.,* 577 P.2d 899 (Okl.1978); *Bennett v. City National Bank and Trust Company,* 549 P.2d 393 (Okl.App.1975) cert. den.: Cf. *Karriman v. Orthopedic Clinic,* 488 P.2d 1250 (Okl.1971).

**4.** "Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."

**5.** See *Nappier v. Jefferson Standard Life Insurance Company,* 322 F.2d 502 (4th Cir. 1963); *Birbaum v. United States,* 436 F.Supp. 967 (E.D.N.Y.1977) affmd. in part, rev'd in part, 588 F.2d 319 (2nd Cir. 1978).

**6.** *Hogan v. State,* 441 P.2d 620, 621 (Nev.1960).

**7.** *Barnes Coal Corporation v. Retail Coal Merchant's Association,* 128 F.2d 645, 648 (4th Cir. 1942).

**8.** *Hurtado v. California,* 110 U.S. 516, 530, 4 S.Ct. 111, 118, 28 L.Ed. 232 (1884).

**9.** *Santiesteban v. Goodyear Tire & Rubber Co.,* 306 F.2d 9 (5th Cir. 1962).

**10.** *Cox Broadcasting Co. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). Also see *Winegard v. Larsen,* 260 N.W.2d 816 (Iowa

public concern. The other limitation is that disclosure must be one which would be offensive to a reasonable person.[11] It is not necessary that the statements be untrue.

■ There is no doubt the statements complained of were made public. Appellant's petition further alleges the publicity was offensive to reasonable people. However, there is no allegation the facts were private and not of public record. Further appellant did not allege sufficient fact to show his actions were not of · legitimate public concern.[12] Petition does not state a cause of action based on unreasonable publicity given to appellant's private life.

■ Under category (d) publicity placing appellant in a false light, there is an overlapping into defamation and often a cause of action in either or both may lie. The cases relying on publicly putting plaintiff in a false light in the public eye, go beyond the narrow limits of libel and slander and may afford a needed remedy not covered by defamation.[13]

Although in this category actual truth of statements is not necessarily an issue, a false impression relayed to the public, is.[14] Here again the statements made by defendants could certainly be highly offensive to a reasonable person. Petition also alleges defendants acted in wanton ᷟ disregard of plaintiff's rights and feelings. However, there is no allegation that the article portrayed appellant in any false manner or that statements were untrue or misleading.

Petition failed to state a cause of action in any of the categories of invasion of privacy. The trial court made no error in sustaining defendants' demurrer.

The concept of "right of privacy" was first expressed ninety (90) years ago in an article coauthored by to-be Justice Brandeis:

"The right of privacy does not prohibit any publication of matter which is of public or general interest . . . The design of the law must be to protect those persons with whose affairs the community has no legitimate concern from being dragged into an undesirable and undeserved publicity, and to protect all persons, whatsoever their position or station, from having matters which they may properly prefer to keep private, made public against their will."

See *"The Right of Privacy," by Warren and Brandeis, 4 Harvard Law Review 193 (1890).*

■ Freedom of the press is not absolute. States may translate into law local policies to promote the health, safety, morals and general welfare of its people. The limits of this sovereign power must always be determined with appropriate regard to the particular subject of its exercise.[15]

■ Freedom of the press does not impart an absolute right to publish without responsibility whatever one may choose, or an unrestricted and unbridled license that affords immunity for every possible use of language. Recovery should be allowed for the abuse of such freedom. Libel is one such abuse. Invasion of privacy is another.

■ An action granted on right of privacy does not lie when "public records" (U. S. Justice Department's list of organized crime) are used. The United States Supreme Court has said that "the interests of privacy fade when the information involved already appears on the public record," and concluded that "once true information is disclosed in public court documents open to public inspection, the press cannot be sanc-

1977); *Beaumont v. Brown,* 257 N.W.2d 522 (Mich.1977).

11. *Melvin v. Reid,* 112 Cal.App. 285, 297 P. 91 (1931).

12. *McNally v. Pulitzer Publishing Co.,* 532 F.2d 69 (8th Cir. 1976), cert. denied, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131.

13. Prosser, Law of Torts (4th Ed. 1971) p. 813.

14. *Rinsley v. Brandt,* 446 F.Supp. 850 (D.Kan. 1977); *Rinsley v. Frydman,* 221 Kan. 297, 559 P.2d 334 (Kan.1977).

15. *Carpenters and Joiners Union of America v. Ritter's Cafe,* 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143 (1942), rehearing denied, 31 U.S. 708, 62 S.Ct. 1038, 86 L.Ed. 1775 (1942).

tioned for publishing it." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 1046, 1047, 43 L.Ed.2d 328 (1975). Further, the *Restatement of Torts (Second), Section 252D*, which we adopt today, states, "There is no liability for giving publicity to facts about the plaintiff's life which are matters of public record."[16]

■ Being in the public spotlight also might exempt one from action, thus where one is a public personage, an actual participant in a public event, or where some newsworthy incident affecting him is taking or has taken place, the right of privacy is not absolute.[17] However, the fact that a person is a public character or legitimate subject of news comment does not justify misleading publicity or misrepresentation.[18]

With few exceptions, the cases hold that once a person's activities become a matter of public interest, he usually cannot revert to a private status. Publishing a biographical sketch of one who twenty-seven (27) years earlier, had been a child prodigy, but who had avoided the public glare ever since, was held not be an invasion of privacy on grounds that his former accomplishments rendered his private life a continuing legitimate subject of public comment.[19]

However, there is some authority indicating one may regain his right of privacy after a sufficient time has lapsed.[20]

AFFIRMED.

16. See *Melvin v. Reid*, 112 Cal.App. 285, 297 P. 91 (1931); *Edmiston v. Time, Inc.*, 257 F.Supp. 22 (S.D.N.Y.1966) as to judicial proceedings.

17. *Gautier v. Pro-Football, Inc.*, 304 N.Y. 354, 107 N.E.2d 485 (1952).

18. *Sinclair v. Postal Telegraph & Cable Co.*, 72 N.Y.S.2d 841 (1935).

19. *Sidis v. F–R Publishing Corp.*, 113 F.2d 806 (2nd Cir. 1940), cert. denied, 311 U.S. 711, 61 S.Ct. 393, 85 L.Ed. 462.

The above rule is true even if the subject has gone to "pitiable lengths" to avoid public scrutiny, and had apparently succeeded in retiring from public life until the article was published.

It was also held not an invasion of privacy to telecast the story of the plaintiff's life, from prosecution for murder until his pardon, even though twelve (12) years has passed from his

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, SIMMS and HARGRAVE, JJ., concur.

OPALA, J., concurs in result.

release from prison until the date of telecast. *Bernstein v. National Broadcasting Co.*, 129 F.Supp. 817 (1955), affirmed at 232 F.2d 369 (D.C.Cir.1956), cert. denied, 352 U.S. 945, 77 S.Ct. 267, 1 L.Ed.2d 239.

20. A woman accused two detectives of extortion and they were subsequently fired and not reinstated. Two years later a newspaper article retold the story, and the Court said it should have been a jury question of whether there was sufficient interest in such.past events to justify the privilege of "public interest." *Dingee v. Philadelphia Daily News*, 328 F.2d 641 (3rd Cir. 1964).

A prostitute had led an exemplary life for seven years before a motion picture mentioned her former life style, *Melvin v. Reid*, 112 Cal. App. 285, 297 P. 91 (1931).