Frenche COLBERT, Appellee,

v.

**WORLD PUBLISHING COMPANY and Newspaper Printing Corporation, Appellants.**

No. 62856.

Supreme Court of Oklahoma.

Nov. 24, 1987.

Lawrence D. Taylor, Tulsa, for appellee.

Boone, Smith, Davis & Hurst, Edwin S. Hurst, Paul E. Swain, Tulsa, for appellants.

KAUGER, Justice.

The two questions presented are: 1) whether the statute of limitations in an action for false light invasion of privacy is the one year limitation period prescribed for libel and slander actions pursuant to 12 O.S. 1981 § 95 (Fourth), or if because the cause of action is an unenumerated tort, the two year limitation period contained in 12 O.S. 1981 § 95 (Third) governs; and 2) whether mere negligence by a media de-fendant is sufficient to allow recovery for false light invasion of privacy. We find that the two year limitation period is con-trolling, and that the standard of liability is measured not by negligence but by know-ingly or recklessly casting the appellee in a false light.

On July 3, 1980, the appellants, World Publishing Company and Newspaper Print-ing Corporation, published a newspaper ar-ticle reporting the death of a former, local school teacher who had been convicted of a gruesome murder, and who was reported to be mentally ill. Attached to this article was a photograph of the appellee, Frenche Colbert. Shortly after Colbert, a resident of Phoenix, Arizona, was told about the article by members of his family—who knew he was not a convicted murderer, mentally ill or dead—he returned to Okla-homa. Friends and acquaintances who saw him during his Oklahoma visit teased and ridiculed him, even though they knew that he was neither a murderer nor mentally ill. Colbert contacted the newspaper concern-ing the possibility of a correction or retrac-tion; however, the article was not retracted or corrected and, ten days later, Colbert returned to Phoenix. Twenty-three months later, in June, 1982, Colbert commenced this action, claiming that the appellants had recklessly placed him in a highly offensive false light in the public eye causing him severe mental anguish and distress, and seeking actual and punitive damages.

The appellants answered, admitting the publication of the article and photograph in question, but denying any knowledge or reckless disregard as to the falsity of the publicized matter, or the false light in which the appellee might have been placed. As an affirmative defense, the appellants claimed that the petition was filed more than one year after the publication, and was, therefore, barred by the one-year Statute of Limitations on actions for def-amation. (The Statute of Limitations issue was disposed of in a pre-trial ruling, and was not presented to the jury.)

The appellants also urged that no liabili-ty for false light invasion of privacy could be imposed absent a showing of actual

knowledge or reckless disregard as to the falsity of the published matter. However, in a subsequent pre-trial ruling, the trial court decided that in order to show sufficient "reckless disregard" to recover for false light invasion of privacy, one need not show that the appellants subjectively entertained serious doubts as to the truth of the publication [1]—the proper test to be applied when a public figure or public official seeks recovery from a media defendant in a libel action.[2] The trial court rejected the proposed jury instructions proffered by the appellants which would have required a finding of actual knowledge or recklessness of the false light in which the appellee was cast. Instead, the trial court instructed the jury that the appellee would be entitled to recover if the appellants were found to be negligent.

The evidence of fault in this case is that several years prior to the publication in question, the appellee's sister sent his photograph to the appellants, together with information about his recent graduation from law school. The photograph was somehow mishandled in the appellants' archives, and in an unknown way, it was included with material regarding the infamous and unfortunate school teacher. There was no showing of malice in law, in the sense of actual knowledge or reckless disregard of the falsity of the publication, or of the false light in which the plaintiff would be cast.[3] Based on the absence of proof of recklessness, the trial court refused to submit the claim for punitive dam-

ages to the jury, but it allowed the jury to consider the actual damages which the appellee might have suffered as a result of the appellants' negligence. The jury returned a verdict for the appellee, fixing his damages at $65,000.

## I

## BECAUSE THE TORT OF FALSE LIGHT INVASION OF PRIVACY IS AN UNENUMERATED TORT, THE STATUTE OF LIMITATIONS IS TWO YEARS PURSUANT TO 12 O.S. 1981 § 95 (Third).

The facts alleged could support at least two recognizable theories of recovery: libel and false light invasion of privacy. Because Frenche Colbert is unquestionably a private figure, as opposed to a public official or public figure, recovery could be secured under a libel theory without proof of malice.[4] He would merely need to prove the negligent publication of a defamatory falsehood by which he suffered damage.[5] However, an action based on this theory of recovery would have to be brought within one year of publication.[6]

▮ The theory of recovery, which is generally referred to as false light invasion of privacy, in some ways overlaps the more familiar defamation.[7] Additionally, it may serve, when paired with a defamation claim, as an alternative or cumulative avenue for relief from a single wrongful occurrence.[8] The significant differences be-

---

1. *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968).

2. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 153, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094, 1110 (1967).

3. *New York Times Co. v. Sullivan*, see note 2, supra.

4. *Gertz v. Welch*, 418 U.S. 323, 346, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789, 809 (1974).

5. *Martin v. Griffin Television, Inc.*, 549 P.2d 85, 92 (Okla.1976). See also Annot., "Libel and Slander: Necessity of Expert Testimony to Establish Negligence of Media Defendant in Def-

amation Action by Private Individual," 37 A.L. R.4th 987 (1985).

6. Title 12 O.S. 1981 § 95 (Fourth) provides in pertinent part:
   "Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: ... Fourth. Within one (1) year: An action for libel, slander, assault, battery, malicious prosecution or false imprisonment...."

7. *McCormack v. Oklahoma Publishing Co.*, 613 P.2d 737, 740–41 (Okla.1980). See also, *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 89 (W.Va.1984).

8. *Chandler v. Denton*, 741 P.2d 855, 862–63 (Okla.1987); *Retherford v. Halliburton*, 572 P.2d 966, 969 (Okla.1978); *Doss Oil Royalty Co. v.*

tween libel and false light invasion of privacy are in the interests sought to be protected and the degree of fault which must be shown in order to effect recovery. In an action for libel, recovery is sought primarily for the injury to one's reputation. The focus of the action is on the effect of the publication on what others may think of the person.[9] Under the theory of false light invasion of privacy, the interest to be vindicated is the injury to the person's own feelings.[10] Although single publication could conceivably touch both interests, in this case no injury to the reputation of Frenche Colbert is alleged nor was any proven. The trial court properly refused to apply the one year limitation period prescribed for recovery under the theory of libel.

The proper limitation period in which to commence an action to recover for mental anguish and emotional distress under the theory of false light invasion of privacy is two years. We have recently discussed the rationale for determining the controlling limitations period in such actions. In *Williams v. Lee Way Motor Freight*, 688 P.2d 1294, 1297 (Okla.1984), we held that an action for injury to the rights of another not arising on contract must be brought within two years, unless it falls among the specifically enumerated tort claims which must be brought within one year.[11] In *Williams*, recovery was sought by an employee for mental anguish and emotional distress suffered on the job, based on the relatively new tort theory of intentional infliction of emotional distress. The trial court entered summary judgment in favor of the employer, finding that the action should have been brought within one year of the alleged injury. On appeal, the employer urged a statutory construction which would group the new tort of intentional infliction of emotional distress with the other tort theories specifically enumerated in 12 O.S. 1981 § 95(4).[12]

This Court held that the Legislature's failure to include this new tort theory with the other more traditional theories, which had to be initiated within one year, was indicative of the Legislature's intent that actions of this type be governed by the more general, two-year statute of limitations provided by 12 O.S. 1981 § 95(3).[13] This reasoning is applicable here because the tort theory of false light invasion of privacy is not listed with those specific theories which must be sued upon within one year. The general two-year limitation period was applied correctly.

## II

### THE DEGREE OF FAULT REQUIRED FOR THE TORT OF FALSE LIGHT INVASION OF PRIVACY IS THE KNOWING AND RECKLESS DISREGARD OF THE FALSE LIGHT IN WHICH THE PERSON IS BEING CAST

#### A.

The tort theory of invasion of privacy first gained judicial recognition in Oklahoma in the case of *Munley v. ISC Financial House, Inc.*, 584 P.2d 1336 (Okla.1978), as an adjunct to the recognized right to recover for intentional infliction of emotional distress. The *Munley* court regarded both tort theories as part of a "modern development in the law to afford some redress to plaintiffs that have suffered from certain previously non-actionable forms of anti-social behavior."[14] The Court was careful to avoid the implication that a law-

*Texas Co.*, 192 Okla. 359, 137 P.2d 934, 936 (1943).

9. *Martin v. Griffin Television, Inc.*, see note 5, supra.

10. *Munley v. ISC Financial House, Inc.*, 584 P.2d 1336, 1338–39 (Okla.1978).

11. *Williams v. Lee Way Motor Freight*, 688 P.2d 1294, 1297 (Okla.1984).

12. See note 6, supra.

13. Title 12 O.S. 1981 § 95 (Third) provides:
   "Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: ...
   Third. Within two (2) years: ... an action for injury to the rights of another, not arising on contract and not hereinafter enumerated; ..."

14. *Munley v. ISC Financial House Inc.*, note 10, supra.

suit could be premised on mere harm to one's feelings. The Court discussed with approval the standard advanced in the Restatement of the Law of Torts (Second), which required intentional conduct which would reasonably be regarded as extreme or outrageous, or intentional intrusion upon the solitude or seclusion of another in a manner that would be highly offensive to a reasonable person. No recovery was allowed in that case because, although the intrusion into Munley's solitude was intentional, the Court found that it was not such as would have been highly offensive to a reasonable person.

More recently, in the case of *McCormack v. Oklahoma Publishing Company*, 613 P.2d 737 (Okla.1980), we again considered the elements of an action based on invasion of privacy, specifically adopting the treatment of that subject in the Restatement of the Law of Torts (Second). One of the claims for relief in that case was that there was publicity placing McCormick in a false light. Relying on the Restatement, the court defined the elements of this claim:

> "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." [15]

The Restatement's use of the language "knowledge or ... reckless disregard as to

the falsity" reflects the view taken by the Supreme Court of the United States in *Time, Inc. v. Hill*, 385 U.S. 374, 389–90, 87 S.Ct. 534, 542–43, 17 L.Ed.2d 456, 467–68 (1967). There, the Court stated:

> "We create a grave risk of serious impairment of the indispensable service of a free press in a free society if we saddle the press with the impossible burden of verifying to a certainty the facts associated in news articles with a person's name, picture or portrait, particularly as related to non-defamatory matter. Even negligence would be a most elusive standard, especially where the content of the speech itself affords no warning of prospective harm to another through falsity. A negligence test would place on the press the intolerable burden of guessing how a jury might assess the reasonableness of steps taken by it to verify the accuracy of every reference to a name, picture or portrait." [16]

The Court also held that in contrast to statements falling within the constitutional guarantee of freedom of the press, knowingly false statements and false statements made with reckless disregard of the truth, do not enjoy constitutional protection.[17]

Subsequently, the Supreme Court of the United States determined in the case of *Cantrell v. Forest City Publishing Company*, 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974), that a private figure might recover against a media defendant under a false-light theory of invasion of privacy for the publication of knowing or reckless falsehoods. However, the Court specifically avoided the opportunity to dis-

---

15. There is a disagreement among commentators concerning whether the invasion of privacy constitutes a single tort or four separate torts. See Annot., "False Light—Invasion of Privacy—Cognizability and Elements, 57 A.L.R. 4th 23 (1987). However, in *McCormack v. Oklahoma Publishing Co.*, note 7, supra, this Court adopted the Restatement (Second) of Torts § 652A (1977), specifically recognizing that the generic tort of the invasion of the right of privacy is divided into four separate categories:

> "(a) unreasonable intrusion upon the seclusion of another,

> (b) appropriation of the other's name or likeness,

> (c) unreasonable publicity given to the other's private life,

> (d) publicity that unreasonably places the other in a false light before the public, ..."

It is the latter tort which concerns us here.

16. *Time, Inc. v. Hill*, 385 U.S. 374, 389–90, 87 S.Ct. 534, 542–43, 17 L.Ed.2d 456, 467–68 (1967).

17. *Id.* See also, S. Metcalf, "Rights and Liabilities of Publishers and Broadcasters," §´2.44, p. 108 (1982).

cuss the issue of whether a state could properly apply a more relaxed standard of fault, such as negligence, to this theory of recovery.[18]

Relying on the foregoing authority, the appellee argues that the adoption of a more relaxed standard, such as negligence, would not offend the federal constitution. Only three jurisdictions have allowed a plaintiff to recover under a negligence theory.[19] Those jurisdictions concluded that because of the strong similarity between a false light claim and a defamation claim the *Gertz v. Welch,* 418 U.S. 323, 356, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789, 809 (1974), standard should replace the *Time, Inc. v. Hill,* teaching in the area of false light privacy. The relaxation of the *Hill* rule may be premature because (1) the *Hill* decision was expressly limited to a private figure involved in a matter of public interest, (2) the *Hill* opinion was handed down prior to the extension of the constitutional standard to libel suits brought by public figures, (3) the common law restrictions on libel suits are more severe than the restrictions in false light privacy suits, and (4) false light cases often arise where no substantial danger to the sensitivities of the plaintiff ap-

pears from the face of the publication.[20] The majority of jurisdictions have followed the rule espoused by *Hill.*[21]

We have previously considered the test by which recovery of this sort is to be measured, and have adopted the Restatement view—that the defendant must have knowledge of, or act in reckless disregard as to the falsity of the publicized matter or the false light in which another would be placed. This is the equivalent of the *Hill* teaching that actual malice must be proven with convincing clarity by showing that the defendant had a high degree of awareness of probable falsity or in fact entertained serious doubts as to the truth of the publication.[22] In *Munley,* we said that:

"There is simply no room in the framework of our society for permitting one party to sue on the event of every intrusion into the psychic tranquility of an individual. If recovery for damage done is to be afforded at all, there must be some test by which to weed out those suits premised on mere discord between individuals while preserving those where the conduct of individuals involved has clearly exceeded tolerable bounds of social deportment." [23]

**18.** *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); *Cantrell v. Forest City Publishing Co.,* 419 U.S. 245, 250, 95 S.Ct. 465, 469, 42 L.Ed.2d 419, 426 (1974); *Crump v. Beckley Newspapers, Inc.,* 320 S.E.2d 70, 88 (W.Va.1984); *Dodrill v. Arkansas Democrat Co.,* 265 Ark. 628, 590 S.W.2d 840, 845 (1979). See also Note, "False Light: Invasion of Privacy?", 15 Tul.L.Jour. 113, 133–34 (1979); Restatement (Second) of Torts § 652E, comment d (1977).

**19.** *Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084, 1092 (5th Cir.1984); *Dresbach v. Doubleday & Co.,* 518 F.Supp. 1285, 1288 (D.C.1981); *Crump v. Beckley Newspapers, Inc.,* see note 18, supra at p. 89.

**20.** *Time, Inc. v. Hill,* see note 16, supra; *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 148–55, 87 S.Ct. 1975, 1988–92, 18 L.Ed.2d 1094, 1107–11 (1967); S. Metcalf, "Rights and Liabilities of Publishers and Broadcasters," § 2.47, p. 112, 114–15 (1982).

**21.** *Fitzgerald v. Penthouse International, Ltd.,* 691 F.2d 666, 670 (4th Cir.1982); *Cantrell v. American Broadcasting Companies, Inc.,* 529

F.Supp. 746, 759 (N.D.Ill.1981); *Holmes v. Curtis Publishing Co.,* 303 F.Supp. 522, 526 (D.S.C. 1969); *McCall v. Courier-Journal & Louisville Times,* 623 S.W.2d 882, 888 (Ky.1981); *McCormack v. Oklahoma Publishing Co.,* 613 P.2d 737, 740–41 (Okla.1980); *Dodrill v. Arkansas Democrat Co.,* 265 Ark. 628, 590 S.W.2d 840, 845 (1979); *Rafferty v. Hartford Courant Co.,* 36 Conn. Sup. 239, 416 A.2d 1215, 1218 (1980). See also S. Metcalf, "Rights and Liabilities of Publishers and Broadcasters", § 2.46, p. 112–13 (1982); Restatement (Second) of Torts § 652E (1977).

**22.** *Fitzgerald v. Penthouse Intern., Ltd.,* see note 21, supra; *Dresbach v. Doubleday & Co.,* 518 F.Supp. 1285, 1288 (D.C.1981); *Rinsley v. Brandt,* 446 F.Supp. 850, 855 (D.Kan.1977); *Dodrill v. Arkansas Democrat Co.,* see note 21, supra; *Rafferty v. Hartford Courant Co.,* see note 21, supra. See also, Restatement (Second) of Torts § 652E, comment d (1977); S. Metcalf, "Rights and Liabilities of Publishers and Broadcasters", § 2.44, p. 108 (1982).

**23.** *Munley v. ISC Financial House Inc.,* note 10, supra.

We find that the right of action for false light invasion of privacy is a product of the same societal need as the tort of outrage or intentional infliction of emotional distress,[24] which will lie only in the presence of extreme and outrageous conduct. We have adopted a standard of knowing or reckless conduct to afford recovery to those who suffer mental anguish by reason of a false light invasion of privacy.[25] Consequently, we are committed to that standard, and will not now adopt a standard of recovery which imposes liability on one who accidentally or negligently injures the feelings of another.

### B.

■ At the conclusion of all the evidence, during arguments on the parties' motions for directed verdict, the appellee conceded the absence of malice, offered no objection to the trial court's elimination of the issue of punitive damages from the jury's consideration, and failed to request a pertinent jury instruction.[26] The trial court refused to submit the issue of punitive damages to the jury upon a failure of proof on the issue of malice.[27] This finding is consistent with our review of the evidence. The malice necessary to create a jury question on the issue of punitive damages would have been reflective of the same standard needed to establish recovery for false light invasion of privacy—knowing or reckless disregard of the false light in which the appellee was being cast. The appellee stated in the record that he was bringing this action only under the negligence theory.[28] He has waived the issue of whether the newspaper's conduct could constitute reckless disregard and thus meet the *Hill* standard of malice. Therefore, we find appellee's possibility of recovery foreclosed. Having failed to show reckless disregard, he may not recover for his mental anguish and emotional distress under the theory of false light invasion of privacy, and having failed to bring this action within the year following publication, he may not recover for the negligent injury to his reputation under a libel theory.

24. Id.

25. *McCormack v. Oklahoma Publishing Co.*, note 7, supra.

26. The appellee's attorney stated in the record that:
"I'd rather have *Gertz* and the language in *Gertz*, but again we're dealing in a negligence case and we're dealing in any kind of reckless wanton behavior, then it's a jury question because although if we're talking about actual knowledge in terms (sic) of a subjective standard, someone has to have this conscious subjective idea that I'm going to do something reckless here and I don't care or I'm going to do this on purpose to hurt somebody, that kind of actual malice standard, we don't have it here. There's no way that's going to be the case. This is a negligence situation. It's not that type of subjective actual malice."

27. Title 23 O.S. 1981 § 9 provides that:
"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant."

28. Even though the petition in this cause alleged that the newspaper recklessly placed the appellee in a false light, the appellee alleged that in the pretrial order he stated that he would be bringing this action in negligence. The pretrial order controls the subsequent course of the action and the pleadings are deemed to have been amended to conform to the order. 12 O.S.1981 Ch. 2, App., Rule 5. The discussion of this matter in the record follows:
"THE COURT: And it's been my understanding really from very early on in the case the petition stated reckless, that the paragraph is going to indicate that you are negligent and the photographs admitted on that assumption. MR. TAYLOR: I might add for the record, too, because in this court we don't often have written pretrial orders but Your Honor keeps the pretrial orders in the file. The pretrial order was conducted in this case after two or three arguments on the burden of proof and on the standard that would be at issue and that I had stated at that time I would be bringing in a negligence instruction and bringing it on a negligence area and the Defendants made it likewise and indicated they would bring it on actual malice based on *New York Times v. Sullivan*. That's been the case on pretrial and before.
THE COURT: That was my understanding that the position of the Defendants were going to take was the Time standard should apply. The Plaintiff was going to allege and prove negligence."

**REVERSED WITH DIRECTIONS TO RENDER JUDGMENT FOR APPELLANTS**

DOOLIN, C.J., and HARGRAVE, V.C.J., HODGES, LAVENDER and SUMMERS, JJ., concur.

OPALA, J., concurs in Part I by reason of *stare decisis;* see *Williams v. Lee Way Motor Freight, Inc.,* Okl., 688 P.2d 1294, 1298 (1984) (Opala, J., dissenting), and concurs in Part II.

SIMMS and ALMA WILSON, JJ., concur in part and dissent in part.

ALMA WILSON, Justice, with whom SIMMS, Justice, joins, concurring in part and dissenting in part.

Although I concur with reversal of the jury verdict, I must dissent to the majority's disposition of the degree of fault required to prove the tort of false light invasion of privacy.

The evidence presented in this case supported a different cause of action than the one pled. Although the plaintiff pled false light invasion of privacy, the facts presented supported a cause of action for libel, which was time barred.

At the trial the evidentiary gist related almost entirely to alleged harm to reputation. Though Appellee lived in Arizona at the time of the publication in question, and no one in Arizona mentioned the article to him, Appellee testified that when he traveled to Oklahoma some time later to visit his parents, friends ridiculed and teased him in jest. Appellee testified that: "I knew that they knew I didn't commit the crime, they knew I hadn't died, of course, they seen me physically, but it got to a point where I really became very disoriented *because of the ridicule....*" (Emphasis supplied.) During closing arguments, Appellee's counsel stated, "Let's talk about reputation. What's more precious than a reputation?" Counsel repeatedly stressed the "thousands and thousands and thousands" of people who read the article and urged recompense to the Appellee therefor. The jury returned a 10–2 verdict for Appellee.

An action for violation of the right of privacy is not concerned with the plaintiff's character or reputation as in an action for libel; but is concerned with alleged injury to the plaintiff's mental peace and comfort. *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). Such loss of mental tranquility must result directly and immediately from the act complained of. Thus, the right protected by the action for invasion of privacy is a personal right, peculiar to the individual whose privacy is invaded. The conduct of third persons, apart from the actor or entity which brings about the alleged loss, is therefore not a factor in an invasion of privacy action. Damages are recoverable because the publicity is likely to cause and does cause severe emotional distress and *not* because of the amount of harm to reputation, as in defamation by libel or slander. In this respect an action for invasion of privacy based upon "false light" publication and an action for defamation by libel or slander differ. Both actions, nevertheless, involve exposure to the public view and in some fact situations an action brought for invasion of privacy by "false light" publication conceivably might have been brought as libel per quod. *See McCormack v. Oklahoma Publishing Company,* 613 P.2d 737, 741 (Okl.1980). However, if the action is not brought as libel per quod, whether by reason of the expiration of the statute of limitations for libel or otherwise, defamatory imputations of character and reputation should be stripped from the case as extraneous circumstances. *See Hazlitt v. Fawcett Publications,* 116 F.Supp. 538, 545 (D.Conn.1953). Only then does this judicially created tort form comprise an independent, separate, and distinct basis of liability governed by the statute of limitations applicable to torts in general.

In the present case, Colbert relied upon defamatory elements at the trial of this matter. The action was brought solely upon an invasion of privacy theory. The trial court should have required Colbert to filter from the action all matters material to a claim of libel, as the statute of limitations as to a claim based upon libel had run. 12 O.S.1981 § 95 (Fourth). A plaintiff cannot have all the benefits of a claim for libel when such a claim is barred.

When stripped of defamatory allegations on which the statute of limitation has run, the gravamen of the action pled and proved by the plaintiff is no longer a viable cause of action. I would reverse and set aside the jury verdict and save for a proper case the first impression issue of the degree of fault required for the tort of false light invasion of privacy. The decision of the majority on this issue is both ill advised and premature.