**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 26 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

AL-HUSSAINI HUSSAIN, an individual,

Plaintiff - Appellant,

v.

PALMER COMMUNICATIONS
INCORPORATED, a Delaware
corporation, d/b/a KFOR-TV; JAYNA
DAVIS, BRAD EDWARDS, MELISSA
KLINZING, individually,

Defendants - Appellees.

No. 00-6366
(W.D. Oklahoma)
D.C. No. CIV-97-1535-L

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO** and **McWILLIAMS**, Circuit Judges, and **STAGG,** District Judge.[**]

---

Plaintiff, Al-Hussaini Hussain, ("Hussain") appeals from the district court's

dismissal of his claims for intentional infliction of emotional distress, defamation and

invasion of privacy, after the court granted the defendants' two motions for partial

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Tom Stagg, United States District Judge for the Western District of Louisiana, sitting by designation.

summary judgment. The plaintiff contends that he was improperly precluded from conducting additional discovery and that the defendants were not entitled to dismissal of his case on summary judgment. For the reasons hereinafter set forth, we **AFFIRM**.

## I.  BACKGROUND

In this diversity action, Hussain alleges that the defendants, Palmer Communications, Inc., d/b/a KFOR-TV, Jayna Davis, Brad Edwards, and Melissa Klinzing, defamed him, invaded his privacy, and intentionally inflicted emotional distress on him through news reports broadcast on KFOR-TV Channel 4 in June of 1995. According to Hussain, he was accused, via television broadcasts of a series of news reports on KFOR, of complicity in the April 1995 bombing of the A.P. Murrah Federal Building in Oklahoma City. The news reports contained various comments about the potential bombers and displayed a photograph of an Iraqi man, who had been living in Oklahoma City since November of 1994, who might be the John Doe #2 sought by authorities in relation to the bombing. The name of the man was never revealed by KFOR, and the face of the man was digitally concealed in all of the news reports. The reports generally related information gathered by KFOR's reporters tending to connect the unidentified man to the bombing.

The plaintiff was unquestionably the unidentified man discussed in KFOR's news reports. Following KFOR's first four broadcasts, Hussain contacted other media outlets,

voluntarily allowing his name and face to be broadcast on two other television stations and then also voluntarily identifying himself as the person in KFOR's news reports. Ultimately, it was determined that no John Doe #2 existed.

Hussain originally filed suit in state court in August of 1995, asserting claims identical to those asserted in the suit presently before this court. Some discovery for the state court suit was conducted by both sides, including interrogatories, requests for production and requests for admission. In March of 1997, the defendants filed a motion for summary judgment, and the plaintiff responded with only a motion for continuance. Thereafter, in April of 1997, the plaintiff voluntarily dismissed his state court suit. The suit was pending in state court for twenty months and, during that time, the plaintiff took no depositions. In September of 1997, the plaintiff filed this suit in federal court.

The plaintiff had a lengthy history of seeking continuances, filing late responses, or filing no responses at all. The plaintiff filed essentially identical discovery requests as propounded with his state court suit upon the defendants contemporaneously with the filing of his federal suit. The plaintiff did no other discovery in the ten months between the filing of the federal complaint and the scheduling conference.

## II. LAW AND ANALYSIS

A. Additional Discovery.

Instead of responding to the defendants' summary judgment motions, the plaintiff filed requests for additional discovery. The district court denied his requests. We review

the district court's denial of the plaintiff's Rule 56(f) requests for an abuse of discretion. See Diaz v. Paul J. Kennedy Law Firm, 289 F.3d 671 (10th Cir. 2002); Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1553 (10th Cir. 1993). We find no abuse of discretion.

Federal Rule of Civil Procedure 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A party seeking time to conduct additional discovery under Rule 56(f) must provide an affidavit identifying what facts are not available and what steps the party has taken to obtain those facts. See Comm. for the First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir.1992). "Rule 56(f) may not be invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable...." Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 833 (10th Cir. 1986). "Furthermore, if the party filing the Rule 56(f) affidavit has been dilatory, or the information sought is either irrelevant to the summary judgment motion or merely cumulative, no extension will be granted." Jensen, 998 F.2d at 1554. "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merits

-4-

of a party's opposition." Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc., 52 F.2d 901, 905 (10th Cir. 1995).

In response to the defendants' motions for summary judgment, the plaintiff filed brief oppositions, in which he argued against dismissal and claimed that additional discovery was necessary to "present all facts which are essential to justify his opposition." Attached to his oppositions were affidavits from his attorney, stating that additional discovery was necessary. Generally, affidavits submitted under Rule 56(f) are entitled to liberal treatment unless they are dilatory or meritless. See Patty Precision v. Brown & Sharpe Mfg. Co. 742 F.2d 1260, 1264 (10th Cir. 1984). However, there are limits regarding when relief under Rule 56(f) should be granted. For instance, the mere assertion that evidence supporting a party's allegation is in the opposing party's hands is insufficient to justify a denial of a summary judgment motion on Rule 56(f) grounds. See id. "[T]he party filing the [Rule 56(f)] affidavit must show how additional time will enable him to rebut movant's allegations of no genuine issue of fact." Id.

There is ample support in the record for the district court's ultimate decision to deny the plaintiff's Rule 56(f) request. One of the principal causes of the discovery problems was the scheduling of the plaintiff's deposition, which was continually delayed due to various reasons. The district court had ruled that no discovery could occur until after the completion of the plaintiff's deposition. The plaintiff contends that he did not consent to the ruling but simply obeyed it. On appeal, the plaintiff continues to assert that

his hands were "tied" throughout his entire case with regard to discovery. However, the plaintiff's contributions to the delays in scheduling his own deposition, in addition to the plaintiff's failure to conduct other discovery, support the district court's decision to deny the plaintiff's Rule 56(f) request.[3] There is no requirement in Rule 56 that discovery be complete before summary judgment can be entered. See Pub. Serv. Co. v. Cont'l Cas. Co., 26 F.3d 1508, 1518 (10th Cir. 1994). Hussain did not show his inability to oppose the summary judgment without the discovery sought, and the district court was within its discretion in denying his requests for additional discovery. Under these circumstances, there was no reversible error on the part of the district court to deny the plaintiff's requests for further discovery. See Comm. for the First Amendment v. Campbell, 962 F.2d 1517, 1523 (10th Cir.1992) (upholding denial of Rule 56(f) motion).

B.      Summary Judgments.

We review the district court's grant of summary judgment de novo, applying the same legal standards as used by the district court under Federal Rule of Civil Procedure

---

[3]There were numerous delays in taking the plaintiff's deposition, not all of which were plaintiff's fault. The delays began when the plaintiff, citing psychological reasons, moved to quash the notice setting his deposition in Oklahoma City. The defendants agreed to consider other alternatives if the plaintiff would provide medical records supporting his assertions. The plaintiff requested and received numerous postponements of his deposition in order to obtain the medical records. In September of 1998, the plaintiff abandoned his request that the deposition be moved. The defendants then requested numerous other medical records, which the plaintiff agreed to provide. The plaintiff also agreed to an independent medical examination in advance of his deposition.

56. See Midland Mortgage Co. v. United States Fid. and Guar. Co., 301 F.3d 1277, 1279 (10th Cir. 2002) (citation omitted). Sitting in diversity, we apply Oklahoma law. See Habermehl v. Potter, 153 F.3d 1137, 1139 (10th Cir. 1998).

The plaintiff asserted claims against the defendants for defamation, invasion of privacy, and intentional infliction of emotional distress. Each of the claims will be addressed seriatim.[1]

    (1)    Defamation.

The defendants sought summary judgment as to the plaintiff's defamation claim, relying upon the following arguments: that the statements about which the plaintiff complained were substantially true (i.e., that the plaintiff is Iraqi) or were non-actionable expressions of opinion; that some of the statements were not about him and were not defamatory to him; that he was not identifiable in the broadcasts; that there was no evidence that he was harmed; and that the defendants were not professionally negligent in preparing the reports that were broadcast. The plaintiff presented no legal arguments or authorities in opposition to the defendants' fully supported motion for summary judgment as to the defamation claim.

Pursuant to the Supreme Court's decision in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S. Ct. 2997 (1974), individual states may define the appropriate standard of

---

[1]We note that, even had additional discovery been allowed by the district court, the plaintiff likely would have failed to meet the necessary elements to recover on any of these claims.

liability of the news media for defamatory falsehoods that injure a private individual. Under Oklahoma law, negligence is the standard of liability. See Martin v. Griffin Television, Inc., 549 P.2d 85, 92 (Okla.1976). Thus, in reporting news stories about private individuals, the media must exercise ordinary care--that "degree of care which ordinarily prudent persons engaged in the same kind of business usually exercise under similar circumstances." Id. As we said in Walker v. City of Oklahoma City, 203 F.3d 837 (10th Cir. 2000) (unpublished disposition), to hold a media defendant liable for defaming a private individual, a plaintiff must establish: (1) that the media defendant published a defamatory falsehood concerning the plaintiff; (2) that the defendant acted negligently in failing to ascertain that the statement was false; and (3) that the plaintiff suffered damages as a result of the falsehood."

To sustain a defamation claim, the plaintiff must prove, as one element, the substantial falsity of a defamatory factual statement made about him by the defendants. The defendants contend that the plaintiff presented no evidence that any of the statements about which he complained and which could be construed as assertions of fact were substantially false.[2]

---

[2]Furthermore, as a general rule, statements which are opinionative and not factual in nature, which cannot be verified as true or false, are not actionable under Oklahoma law. See Miskovsky v. Okla. Publ'g Co., 654 P.2d 587, 593-94 (Okla. 1982). However, if an opinion is stated as or "is in the form of a factual imperative," or if an opinion is "expressed without disclosing the underlying factual basis for the opinion, the opinion is actionable under Oklahoma law if the opinion implies or creates a reasonable inference that the opinion is justified by the existence of undisclosed defamatory facts."

Whether a statement is one of fact or opinion is a question of law for the court--but a difficult one. See Rinsley v. Brandt, 700 F.2d 1304, 1309 (10th Cir. 1983). The district court concluded that KFOR's news reports were not substantially false, that the defendants could not, therefore, have recklessly disregarded the truth, and that the news reports were not highly offensive. As for this argument, the defendants contend that the plaintiff again presented no evidence, argument or authorities that any of the statements which the court concluded were opinion in whole or in part were not so.

In Zeran v. Diamond Broad., Inc., 203 F.3d 714 (10th Cir. 2000), a panel of this court addressed a claim similar to the one currently before us. In Zeran, the plaintiff was the victim of a hoax related to the Oklahoma City bombing due to a radio broadcast. The plaintiff filed suit against the radio station, asserting claims for defamation, false light invasion of privacy and intentional infliction of emotional distress. Although the plaintiff had suffered an injury, the Zeran court found that the plaintiff did not suffer an injury to his reputation, which is the essence of an action for defamation. See id. at 719. The same is true in the instant case. Although our plaintiff may have suffered an injury, he did not suffer injury to his reputation, as he could point to no one who thought he was John Doe #2 as referred to in KFOR's news reports. In the instant case, as in Zeran, the plaintiff's defamation claim fails because the plaintiff has not shown that any person thinks less of him as a result of the broadcasts. Accordingly, the district court was correct in its grant of

McCullough v. Cities Serv. Co., 676 P.2d 833, 835 (Okla. 1984).

summary judgment to the defendants as to the plaintiff's claim for defamation.

(2)     Invasion of Privacy--False Light.

In distinguishing an action for defamation from an action for false light invasion of privacy under Oklahoma law, the Oklahoma Supreme Court has instructed that in the former, "recovery is sought primarily for the injury to one's reputation," that is, "what others may think of the person," while in the latter, the "interest to be vindicated is the injury to the person's own feelings." Colbert v. World Publ'g Co., 747 P.2d 286, 289 (Okla. 1987). Oklahoma recognizes the invasion of privacy tort for publicity placing persons in a false light. See McCormack v. Okla. Publ'g Co., 613 P.2d 737, 740 (Okla. 1980).[3] In McCormack, the Oklahoma Supreme Court expressly adopted this tort as set forth in the Restatement (Second) of Torts § 652E. To state a claim for false light invasion of privacy, the plaintiff must prove that (1) the defendants gave publicity to a matter placing the plaintiff before the public in a false light; (2) the false light would be highly offensive to reasonable persons under the circumstances; and (3) the defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. See id. at 740.[4] Courts may

---

[3]Section 652A provides four distinct forms of invasion of privacy recognized as tortious: (1) unreasonable intrusion upon the seclusion of another, (2) appropriation of the other's name or likeness, (3) unreasonable publicity given to the other's private life, and (4) publicity that unreasonably places the other in a false light before the public. See also McCormack, 613 P.2d at 740.

[4]The Restatement says, and was quoted in McCormack as saying, that the actor must have had knowledge or acted in reckless disregard as to (1) the falsity of the

determine, as a matter of law, whether a defendant has placed a plaintiff in a light which would be "highly offensive" to a reasonable person under the circumstances. Comment c to the Restatement (Second) § 652E, which explains the "highly offensive" standard, provides that

> [t]he rule stated in this Section applies only when the publicity given to the plaintiff has placed him in a false light before the public, of a kind that would be highly offensive to a reasonable person. In other words, it applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity. . . . It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy.

To satisfy the first element of the tort of false light invasion of privacy, the plaintiff must prove that he was portrayed "in [a] false manner or that statements were untrue or misleading." McCormack, 613 P.2d at 741. With regard to a false light invasion of privacy claim, mere negligence is insufficient to establish the requisite fault necessary to hold a defendant liable. The Oklahoma Supreme Court has clearly stated that the defendant must have "had a high degree of awareness of probable falsity or in fact entertained serious doubts as to the truth of the publication." Colbert, 747 P.2d at

_____

publicized matter _and_ (2) the false light in which the other would be placed. The Colbert court replaces the "and" with "or", indicating that reckless disregard either toward falsity or false light is sufficient for liability. Hussain's claims fails under either standard.

-11-

289, 291. In this regard, the plaintiff has failed to offer any proof that the defendants either knew the information they broadcast was false or acted recklessly. The district court, after reviewing the undisputed facts and analyzing KFOR's news reports, concluded that the defendants did not recklessly disregard the truth. We agree. This was even more true in view of the fact that the district court accurately determined that KFOR's news reports were not substantially false nor highly offensive, as they were news reports about an unidentifiable person.

In Colbert, the Oklahoma Supreme Court surveyed and rejected the arguments for a negligence standard in false light cases stating that it was "committed" to "a standard of knowing or reckless conduct to afford recovery to those who suffer mental anguish by reason of a false light invasion of privacy." Colbert, 747 P.2d at 292. In order to establish reckless disregard, the plaintiff must demonstrate actual knowledge of probable falsity. The plaintiff contends that the defendants failed to properly investigate their information and were reckless by accepting the information at face value and not verifying its authenticity. "The only extent that an investigation enters into the consideration of the premises is if the investigation is made and through it, actual knowledge is imparted." Jurkowski v. Crawley, 637 P.2d 56, 60 (Okla. 1981).

The district court correctly found that the plaintiff could not establish that the news reports were highly offensive to a reasonable person and substantially false. Accordingly, the district court did not err when it granted summary judgment as to plaintiff's false light

invasion of privacy claim.

(3)    Intentional Infliction of Emotional Distress.

Finally, Hussain contends that the district court erred in dismissing his claim for intentional infliction of emotional distress. In Eddy v. Brown, 715 P.2d 74 (Okla. 1986), the Oklahoma Supreme Court recognized the existence of a claim for intentional infliction of emotional distress as an independent tort, to be governed by the narrow standards in the Restatement (Second) of Torts § 46(1), which provides:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Eddy, 715 P.2d at 76-77; see also Breeden v. League Servs. Corp., 575 P.2d 1374, 1376 (Okla. 1978). Under Oklahoma law, the trial court is given the initial responsibility:

> to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the . . . standards [of a cause of action for intentional infliction of emotional distress]. Only when it is found that reasonable men would differ in an assessment of this critical issue may the tort-of-outrage claim[1] be submitted to the jury.

Eddy, 715 P.2d at 76-77. The defendants' conduct must be "beyond all possible bounds of decency" or "utterly intolerable in a civilized community." Id. at 77. Nothing short of "[e]xtraordinary transgressions of the bounds of civility" will give rise to liability for

---

[1]Intentional infliction of emotional distress is also known as a tort of outrage. See Gaylord Entm't Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998).

-13-

intentional infliction of emotional distress. Merrick v. N. Natural Gas Co., 911 F.2d 426, 432 (10th Cir. 1990) (applying Oklahoma law). Furthermore, the "distress must be of such a character that no reasonable person could be expected to endure it." Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1389 (10th Cir. 1991) (citation omitted). To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must demonstrate: (1) that the tortfeasor acted intentionally or recklessly; (2) that the tortfeasor's conduct was extreme and outrageous; (3) that plaintiff actually experienced emotional distress; and (4) that the emotional distress was severe. See Pytlik v. Prof'l Res. Ltd., 887 F.2d 1371, 1379 (10th Cir. 1989) (applying Oklahoma law); Daemi, 931 F.2d at 1387.

After careful review, we find nothing in the record which indicates that the defendants behaved in such an extreme or outrageous manner towards Hussain as to impose liability for intentional infliction of emotional distress. There is no evidence in the record to indicate that the plaintiff could prove that the defendants' conduct qualified under any of these standards. Accordingly, the grant of summary judgment as to the plaintiff's claim for intentional infliction of emotional distress was proper.

C.      Conclusion.

The above analysis of the evidence and applicable legal standards supports the

district court's conclusions that the plaintiff's claims cannot survive summary judgment.

**AFFIRMED.**


Entered for the Court,



Tom Stagg
District Judge