**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KENNETH M. ZERAN,

      Plaintiff-Appellant and
      Cross-Appellee,

v.

DIAMOND BROADCASTING, INC.,

      Defendant-Appellee and
      Cross-Appellant.

Nos. 98-6092 and 98-6094

ORDER

Filed February 17, 2000

Before **HENRY** and **MURPHY**, Circuit Judges, and **KIMBALL**,[*]

On the court's own motion, the order and judgment filed on January 28, 2000, has

been ordered published. The published opinion is attached to this order.

Entered for the Court

Patrick Fisher, Clerk of Court

---

[*]The Honorable Dale A. Kimball, United States District Judge for the District of
Utah, sitting by designation.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 28 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

————————————————

KENNETH M. ZERAN,

      Plaintiff-Appellant and
      Cross-Appellee,

v.

                     Nos. 98-6092 and 98-6094

DIAMOND BROADCASTING, INC.,

      Defendant-Appellee and
      Cross-Appellant.

————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-96-0008-T)

————————————————

James A. Ikard (Leo Kayser, III, of Kayser & Redfern, LLP, New York, New York, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellant and Cross-Appellee.

Robert D. Nelon (Jon Epstein and Lorinda G. Holloway, with him on the brief), of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, Oklahoma, for Defendant-Appellee and Cross-Appellant.

Before **HENRY** and **MURPHY**, Circuit Judges, and **KIMBALL**,[*] District Judge.

————————————————

**KIMBALL,** District Judge.

————

[*]The Honorable Dale A. Kimball, United States District Judge for the District of Utah, sitting by designation.

Plaintiff-Appellant Kenneth Zeran ("Plaintiff") appeals from an order of the district court granting Defendant-Appellee Diamond Broadcasting, Inc. ("Defendant") summary judgment. Defendant cross appeals the district court's denial of Defendant's application for costs. After a background section, each matter is considered in turn.

Plaintiff has also appealed the district court's denial of Plaintiff's motion for a new trial and requested certification of two questions to the Oklahoma Supreme Court. These subsidiary matters are addressed in connection with the primary legal issues to which they pertain.

## BACKGROUND

Plaintiff was the victim of a malicious hoax. In the immediate aftermath of the bombing of the Alfred P. Murrah Federal Building in downtown Oklahoma City, a posting appeared on an Internet bulletin board announcing the availability for sale of "Naughty Oklahoma T-Shirts," bearing such slogans, to repeat only the least offensive, as "Rack'em, Stack'em and Pack'em — Oklahoma 1995" and "Visit Oklahoma — it's a Blast." Another slogan crudely referenced the children who died in the bombing. The posting was made by someone using the screen name "Ken ZZ03 " and indicated that the shirts could be ordered by telephone. The number provided was Plaintiff's business telephone number.

Plaintiff had nothing to do with the posting. Plaintiff lives in Seattle, Washington,

and is an accomplished artist, photographer, and film maker. America Online ("AOL"), an Internet service provider, provided the unique screen name "Ken ZZ03" to an individual who opened up a trial AOL membership. AOL maintains a database with the names, addresses, phone numbers, and credit card numbers of its members, searchable by screen name. However, AOL does not verify member information before allowing a new member to go online utilizing a trial membership, which AOL disseminates by the tens of thousands. The true identity of Ken ZZ03 remains unknown, as the account was opened with false information.

Ken ZZ03 opened up at least two more AOL membership accounts with false information, adopting similar screen names (Ken ZZ033 and Ken Z033) and posting increasingly offensive items for sale, always providing Plaintiff's telephone number.

The first posting appeared on April 25, 1995, six days after the bombing. On that same day, Plaintiff began receiving phone calls, which he described as "negative," "unpleasant," and "nasty and threatening." The additional postings were made on April 26, 1995, and on April 28, 1995.

Upon learning of the postings, Plaintiff, who is not an AOL member, notified AOL that he was not involved and asked AOL to delete the postings, place notices on AOL that the postings were false, and take steps to prevent his phone number from appearing in any future postings. AOL declined to help and the postings remained on the Internet for at least a week.

Defendant owns KRXO, a classic-rock radio station in Oklahoma City. On April 29, 1995, an AOL member sent an e-mail containing a copy of the original, April 25th posting to one of KRXO's on-air personalities, Mark ("Shannon") Fullerton, who, together with Ron ("Spinozi") Benton, hosted the "Shannon & Spinozi Show," a drive-time morning show, which usually consisted of light-hearted commentary, humor, and games. In the aftermath of the bombing, and continuing for a period of four to six weeks thereafter, however, the show had become a forum for discussion of the bombing and expression of the emotions it aroused. Its tone was serious and somber.

Shannon first saw the e-mail either late in the evening on the day it was sent or early the next morning, May 1, 1995. Shannon was an AOL member and had given his screen name out over the air to enable his listeners to send messages to him. He did not know the person who sent the posting.

Before beginning his shift on May 1, Shannon unsuccessfully attempted to e-mail Ken ZZO3 through AOL, but received a pop-up message informing him that the addressee was not a known AOL member. He did not attempt to call the telephone number on the posting, purportedly because it was before business hours.

Shannon then went on air, discussing the posting, reading the slogans, and reading Plaintiff's telephone number. Shannon urged his listeners to call Ken ZZ03 and tell Ken ZZ03 what they thought of him for offering such products. On that day, Plaintiff received approximately 80 angry, obscenity-laced calls from the Oklahoma City area, including

4

death threats. Plaintiff described it as the worst day of his life and, shortly thereafter, involved law enforcement. The anxiety Plaintiff felt as a result eventually led him to visit his family physician, who treated Plaintiff by prescribing an anti-anxiety drug.

Although most of the callers hung up before Plaintiff had an opportunity to speak, Plaintiff was able to learn that the posting had been mentioned on KRXO. Plaintiff called KRXO and asked that KRXO broadcast a retraction, which it did.

Plaintiff does not know of anyone who knows him by the name Kenneth Zeran who saw the AOL postings, heard the broadcast, or associated him with "Ken Z" or the phone number on the AOL postings.

## DISCUSSION

### A.    Defendant's Motion for Summary Judgment.

Based on the broadcast, Plaintiff asserted claims of defamation, false light invasion of privacy, and intentional infliction of emotional distress. The district court granted Defendant's motion for summary judgment on all claims. "We review the granting of summary judgment *de novo,* applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c)." *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1510 (10th Cir. 1996).

### 1.    *Defamation.*

Defamation through an oral communication, or slander, is defined by statute in Oklahoma as a false and unprivileged communication that (1) charges a person with a

5

crime; (2) accuses him of having an infectious, contagious, or loathsome disease; (3) maligns him with respect to his office, profession, trade, or business; (4) imputes to him impotence or want of chastity; or (5) by its natural consequences, causes actual damages. *Okla. Stat. tit. 12, § 1442 (1991).*

The district court correctly determined that the only subdivision possibly applicable to the broadcast is the last one, slander *per quod.* Evidence of special damages was consequently required. *Kleier Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1046 (10th Cir. 1990) (applying Oklahoma law and affirming dismissal of defamation *per quod* claim when plaintiff failed to allege special damages); *Krebsbach v. Henley*, 725 P.2d 852, 856 (Okla. 1986) (affirming grant of summary judgment against plaintiff alleging defamation *per quod* when uncontroverted facts were insufficient to support inference that plaintiff had suffered special damages).

The district court questioned whether the medical expenses incurred by Plaintiff were sufficient to establish the required special damages, but granted summary judgment on the ground that the evidence was insufficient to establish an injury to Plaintiff's reputation. We affirm on both grounds.

Emotional distress is not a form of special damages, and Plaintiff's *de minimis* medical expenses, consisting of one visit to his physician and one prescription drug purchase, are insufficient to support the cause of action. Under the principle of *de minimis non curat lex*, the *de minimis* doctrine, the law does not care for, or take notice

6

of, very small or trifling matters.  *Conway v. Watt*, 717 F.2d 512, 516 (10th Cir. 1983).

Although Plaintiff suffered an injury, the district court correctly found that Plaintiff did not suffer an injury to his reputation, which is the essence of an action for defamation.  In understanding Oklahoma law in this regard, *Colbert v. World Publishing Co.,* 747 P.2d 286 (Okla. 1987), is instructive.  In *Colbert,* the defendant newspaper published the plaintiff's photograph in connection with an article reporting the death of a local school teacher who had previously been convicted of a gruesome murder and was reported to be mentally ill.  *Id*. at 287.  The plaintiff was teased and ridiculed as a consequence, but no one believed that he was a murderer or mentally ill.

In distinguishing an action for defamation from an action for false light invasion of privacy, the Oklahoma Supreme Court explained that in the former, "recovery is sought primarily for the injury to one's reputation," that is, "what others may think of the person," while in the latter, the "interest to be vindicated is the injury to the person's own feelings." *Id.* at 289.

Plaintiff's defamation claim fails because Plaintiff has not shown that any person thinks less of him, Kenneth Zeran, as a result of the broadcast.  As the district court found, there was no evidence that anyone who called his number in response to the postings or the broadcast even knew his last name.  In other words, under the facts of this case, there was an insufficient link between Plaintiff's business telephone number and Plaintiff himself for Plaintiff to have sustained damage to his reputation.

7

For this reason, we deny Plaintiff's motion to certify to the Oklahoma Supreme Court the question of whether a previously anonymous person can be given a negative reputation for which he can recover in defamation. The question is not determinative here because there is no evidence that a negative reputation for Plaintiff was created by the broadcast.

## 2. *False Light Invasion of Privacy*.

Oklahoma has recognized false light invasion of privacy as formulated in the Restatement (Second) of Torts § 652E (1977), which provides:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*McCormack v. Oklahoma Publishing Co.,* 613 P.2d 737, 740 (Okla. 1980); *Colbert,* 747 P.2d at 290. Mere negligence is insufficient to establish the requisite fault necessary to hold a defendant liable — the defendant must have "had a high degree of awareness of probable falsity or in fact entertained serious doubts as to the truth of the publication." *Colbert,* 747 P.2d at 291.

The district court granted summary judgment to Defendant on this claim on the ground that Plaintiff had failed to offer proof that Defendant's employees either knew the postings were fictitious or acted recklessly, as that term is defined by the controlling

8

authorities. The district court was influenced by the fact that Plaintiff's own expert found that they did not satisfy the level of culpability necessary to impose liability, opining only that "Mark Shannon and Ron Benton were extremely negligent and violated standards of professional conduct when hosting the Shannon and Spinozi Show on May 1, 1995." We affirm on the same basis.

Plaintiff first asserts that the district court erred in interpreting Oklahoma law to require evidence of recklessness, arguing that, given the facts of this case, the Oklahoma Supreme Court would no longer apply the *Colbert* recklessness standard and would instead follow other states that have permitted recovery under a negligence theory in false light media cases involving private individuals and matters of public concern. In the alternative, Plaintiff seeks certification to the Oklahoma Supreme Court of the question of whether the recklessness standard applies here.

In *Colbert*, the Oklahoma Supreme Court surveyed and rejected the arguments for a negligence standard in false light cases stating that it was "committed" to "a standard of knowing or reckless conduct to afford recovery to those who suffer mental anguish by reason of a false light invasion of privacy." 747 P.2d at 292. Plaintiff has cited no authority subsequent to *Colbert* that justifies Plaintiff's prediction that the Oklahoma Supreme Court would retreat from the *Colbert* requirements. Accordingly, we decline to certify the question at issue and uphold the district court's application of the recklessness requirement.

Plaintiff next argues that even if knowing or reckless conduct is required, the conduct of Shannon and Spinozi, in accepting the posting at face value and failing to verify its authenticity, is sufficient to avoid summary judgment, notwithstanding Plaintiff's expert's failure to use the term "reckless" in describing their actions. Plaintiff also assigns error to the district court's refusal to accept a new affidavit from Plaintiff's expert, submitted in connection with Plaintiff's motion for a new trial filed pursuant to Rule 59(e) of the *Federal Rules of Civil Procedure*.

In order to establish reckless disregard, Plaintiff must demonstrate actual knowledge of probable falsity. "The only extent that an investigation enters into the consideration of the premises is if the investigation is made and through it, actual knowledge is imparted." *Jurkowski v. Crawley*, 637 P.2d 56, 60 (Okla. 1981).

Plaintiff's expert's affidavit, regardless of its content, is not relevant for the same reason. Plaintiff's expert could not possibly have had personal knowledge concerning the relevant question, namely, whether Shannon and Spinozi had an actual, subjective awareness that what they were repeating on the air was probably false. For this reason, we find that the district court did not abuse its discretion in denying Plaintiff's motion for a new trial and affirm the district court's dismissal of the claim.

### 3. *Intentional Infliction of Emotional Distress.*

Oklahoma recognizes intentional infliction of emotional distress ("IIED") as formulated in the Restatement (Second) of Torts § 46(1) (1965), which provides:

10

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The district court granted summary judgment against Plaintiff on the ground that Plaintiff failed to present evidence sufficient to show that KRXO behaved in an extreme and outrageous way toward him and on the ground that Plaintiff failed to demonstrate that he suffered severe emotional distress as a result. We affirm on the same grounds.

"It is the trial court's responsibility initially to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the § 46 standards." *Eddy v. Brown*, 715 P.2d 74, 76 (Okla.1986). The conduct must be beyond all bounds of human decency or such as is regarded as utterly intolerable in a civilized community. *Id.* at 77.

The conduct on which Plaintiff's claim is based — the commentary of a radio talk show host concerning an offensive advertisement that appeared on the Internet, even if that host failed to first verify that the information contained in the advertisement was accurate — does not compare to the kinds of conduct that have sustained IIED claims. We find the present case to be controlled by *Jordan v. World Pub. Co.,* 872 P.2d 946 (Okla. Ct. App. 1994), in which the plaintiff, a public figure, sought recovery for negligent infliction of emotional distress when a newspaper published an offensive letter to the editor falsely attributed to him.

Like Plaintiff here, the plaintiff in *Jordan* alleged that the defendant failed to

11

verify the authorship of the letter before publishing it.  The Court of Appeals of Oklahoma upheld the trial court's dismissal of the claim on the ground that the First Amendment required the plaintiff to establish at least the same level of intent to recover for the infliction of emotional harm as is necessary to find defamation, or the protection provided by the First Amendment "could be circumvented merely by labeling a lawsuit as negligent action rather than one for libel."  *Id.* at 948.

Notwithstanding Plaintiff's status as a private figure, the same principle applies here.  *Colbert* requires private figures to demonstrate actual knowledge of probable falsity in order to recover from an act of negligent publishing.  To allow recovery on a lesser showing of culpability for the same act under a different cause of action would erode the protections *Colbert* affords.

It is also the trial court's initial responsibility to determine whether the distress allegedly suffered by the plaintiff is severe emotional distress. *Joffe v. Vaughn*, 873 P.2d 299, 302 n.6 (Okla. Ct. App. 1993).  "In other words, the distress must be of such character that 'no reasonable person could be expected to endure it.'"  *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1389 (10th Cir. 1991) (*quoting* Restatement (Second) of Torts, *supra,* § 46 cmt j) (applying Oklahoma law).  Again, we concur with the district court in his finding that the evidence Plaintiff submitted fails to show that the level of distress he suffered was sufficiently severe to be actionable.

In *Daemi*, this Court upheld the district court's finding, made at the conclusion of a

12

bench trial, that the plaintiff's evidence failed to support an IIED claim. Such evidence showed that the defendant's conduct made the plaintiff "literally sick to his stomach" and caused the plaintiff to seek treatment from a doctor on at least one occasion. 931 F.2d at 1389. Plaintiff suffered similar symptoms, and, without minimizing the distress Plaintiff endured, we agree that it was not sufficiently severe.

In this regard, we are not influenced by the fact that Plaintiff did not seek professional treatment and did not discuss his distress with those closest to him. This Court recognizes that there are differences in the manner in which individuals cope. This Court is more influenced by the lack of evidence showing that the distress interfered with Plaintiff's ability to conduct his daily life affairs.

**B.      Defendant's Application for Costs.**

Defendant appeals an order of the district court denying it costs as a prevailing party under Rule 54(d)(1) of the *Federal Rules of Civil Procedure*. The district court denied Defendant's application on the grounds, as explained in the order, that, "while the court felt compelled under the applicable law to find in the defendant's favor, it did not condone the behavior of the defendant's employees."

"A district court's denial of costs to the prevailing party is reviewed under an abuse of discretion standard." *Aerotech, Inc. v. Estes,* 110 F.3d 1523, 1526 (1997). Defendant argues that the district court abused its discretion by denying costs as a penalty not for improper behavior as a litigant, but for non-actionable behavior giving rise to the

13

litigation.

Rule 54(d)(1) provides in relevant part that costs "shall be allowed as of course to the prevailing party unless the court otherwise directs."  The allowance or disallowance of costs to a prevailing party is within the sound discretion of the district court. *Homestake Mining Co. v. Mid-Continent Exploration Co.*, 282 F.2d 787, 804 (10th Cir. 1960).  However, this discretion is limited in two ways.  "First, it is well established that Rule 54 creates a presumption that the district court will award costs to the prevailing party." *Cantrell v. IBEW Local 2021,* 69 F.3d 456, 458-59 (10th Cir. 1995).  Second, the district court must provide a valid reason for not awarding costs. *Id.* at 459.  The district court's stated reason for denying costs was, essentially, that although Defendant's behavior was not legally actionable, it was sufficiently distasteful to warrant the denial of litigation costs.

While this Court has discussed various circumstances in which a district court may properly exercise its discretion to deny costs, including when the prevailing party was only partially successful, when damages were only nominal, when costs were unreasonably high or unnecessary, when recovery was insignificant, or when the issues were close or difficult, *see, e.g., Cantrell,* 69 F.3d at 459, this Court has never attempted to create an exclusive list of valid reasons.  Nor has this Court stated that misconduct outside the litigation process is not a justifiable reason for denying costs.

However, case law from other jurisdictions points to the conclusion that a district

14

court may not deny costs on the ground that the district court personally disapproves of the conduct upon which the plaintiff's unsuccessful claim was based. *See, e.g., Zenith Insur. Co. v. Breslaw*, 108 F.3d 205, 207 (9th Cir. 1997) ("[D]enial of Rule 54(d) costs operates to punish the prevailing party for some impropriety *during the course of the litigation.*" (emphasis added)); *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986) (stating that the district court may deny costs "where the prevailing party should be penalized for unnecessarily prolonging trial or for injecting unmeritorious issues"); *Popeil Bros., Inc. v. Schick Elec., Inc.*, 516 F.2d 772, 775 (7th Cir. 1975) ("[T]he denial of costs to the prevailing party or the assessment of partial costs against him is in the nature of a penalty *for some defection on his part in the course of the litigation . . . .*" (emphasis added) (quoting *Chicago Sugar Co. v. American Sugar Refining Co.*, 176 F.2d 1, 11 (7th Cir. 1949), *cert. denied* 338 U.S. 948 (1950))); *Smith v. Southeastern Penn. Transp. Auth.*, 47 F.3d 97, 99 (3d Cir. 1995) (quoting *Chicago Sugar*). In *Chicago Sugar*, the Seventh Circuit went even further, strongly implying that extra-judicial misconduct cannot be the basis for a district court's denial of costs to the prevailing party: "[T]he penalty of denial or apportionment of costs under Rule 54(d) should be imposed *only for acts or omissions on the part of the prevailing party in the actual course of the litigation . . . .*" *Chicago Sugar*, 176 F.2d at 11 (emphasis added).

Accordingly, we now hold that the district court's own view of extra-judicial conduct, which the law does not recognize as legally actionable, should play no part in the

district court's decision whether to override the presumption that the prevailing party receives costs. In denying Defendant costs on that basis, the district court abused its discretion.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Defendant and we REVERSE and REMAND the district court's denial of costs to Defendant, with instructions to determine, consistent with this order, whether Defendant should receive its costs.