**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., Plaintiffs,**

v.

**VOSS ELECTRIC COMPANY d/b/a Voss Lighting, Defendant.**

**Nos. CIV–02–92–C, CIV–02–100–C.**

United States District Court, W.D. Oklahoma.

April 7, 2003.

Robert A Canino, Toby W Costas, Sidney B Chesnin, David C Rivela, Equal Employment Opportunity Commission, Dallas, TX, Holly Waldron Cole, Equal Employment Opportunity Commission, Oklahoma City, OK, for Equal Employment Opportunity Commission, plaintiff.

Andrew W Lester, Shannon F Davies, Jon McLanahan, Karen T Speegle, Lester Loving & Davies, Edmond, OK, for Voss Electric Company dba Voss Lighting, defendant.

John Roger Hurt, Kathryn M Zynda, Pierce Couch Hendrickson, Baysinger & Green, Oklahoma City, OK, for Rick Eiland, Cindi Eiland, plaintiffs.

## *AMENDED ORDER*

CAUTHRON, Chief Judge.

Before the Court is Defendant's Motion for Summary Judgment. Plaintiffs filed separate responses to which Defendant filed separate replies.[1] The matter is now at issue.

### I. BACKGROUND

Plaintiff Rick Eiland brought the present action alleging Defendant violated the terms of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), by failing to accommodate him and by wrongfully terminating his employment. Defendant denies Mr. Eiland's allegations and filed the present motion asserting the undisputed material facts entitle it to judgment. Plaintiff Cindy Eiland asserts that the manner in which Defendant treated her prior to terminating her husband gives rise to a claim for intentional infliction of emotional distress. Defendant asserts that its actions, as they relate to Mrs. Eiland, fall short of the extreme and outrageous standard required to support her tort claim.

The parties submit the following facts are undisputed:

Mr. Eiland began his employment with Defendant in February of 1992 and he was terminated by Defendant on February 10, 2000. On January 14, 2000, Mr. Eiland failed to report for work. From January 16, 2000, until January 21, 2000, Mr. Eiland was hospitalized at Deaconess Hospital for treatment for a mental illness. From January 28, 2000, through February 3, 2000, Mr. Eiland was hospitalized in Liberal, Kansas, for the same condition. During these hospitalizations, Mr. Eiland was delusional, incoherent, and out of touch with reality for periods of time. At other times he was able to function, including using the phone to visit with family and friends and driving a car. Between January 14, 2000, and Mr. Eiland's termination on February 10, 2000, Mrs. Eiland was in contact with Defendant. She did not, however, explain Mr. Eiland's problem or offer a definite date on which he could return to work. Between January 14, 2000, and February 10, 2000, Defendant was not provided with any medical records outlining Mr. Eiland's condition. On February 11, 2000, Defendant received a letter from one of Mr. Eiland's doctors in Liberal, Kansas, stating Mr. Eiland would be off work until further notice. On February 25, 2000, the same doctor sent Defendant a letter stating Mr. Eiland could return to work. Mr. Eiland states that he is unable to perform the major life functions of concentrating, caring for himself, interacting with others, sleeping, and thinking. Mr. Eiland admits that while medicated he can perform these activities and should continue to be able to perform them as long as he takes his medication.

Mr. Eiland submits the following facts are material and in dispute and thereby demonstrate summary judgment is improper:

On January 15, 2000, Mrs. Eiland became concerned because Mr. Eiland was acting irrationally—he was flighty and compulsive. Mr. Eiland told his wife they needed to hide the telephones. On January 16, 2000, Mrs. Eiland took her husband to Deaconess Hospital where he was admitted to the psychiatric ward. While at Deaconess, Mr. Eiland acted irrational-

---

1. This matter was originally filed as two separate cases with the EEOC as Plaintiff in one and Mr. and Mrs. Eiland as Plaintiffs in the other. The Court then consolidated the cases. The Court has been informally notified that Defendant and Mr. and Mrs. Eiland have reached a settlement agreement. However, in light of the impending trial, and in the absence of any official notice, the Court has ruled on the pending motions as they relate to all parties.

ly, running through the halls naked and smearing feces on the wall. On January 17, 2000, Mrs. Eiland called her husband's supervisor and told him her husband was in the psychiatric ward at Deaconess. Mr. Eiland was released from Deaconess on January 21, 2000, but was still impulsive and irrational. On January 28, 2000, Mr. Eiland was admitted to the psychiatric ward of Southwestern Medical Center Hospital in Liberal, Kansas. At that time he was diagnosed with bipolar disorder. Mrs. Eiland again called Mr. Bottger, the supervisor, and informed him of Mr. Eiland's hospitalization. On February 4, 2000, Mrs. Eiland faxed Mr. Bottger and informed him that her husband was being released from the hospital because the insurance company would not pay for any more days but that he could not return to work for at least two more weeks. After being unable to get a doctor's note, Mrs. Eiland called Mr. Bottger on February 9, 2000. Mr. Bottger then sent an e-mail to Mr. Sanderson, a vice president of Defendant, informing him of Mr. Eiland's diagnosis and that he was incoherent much of the time. On February 9, 2000, Mr. Sanderson drafted the letter terminating Mr. Eiland. Mr. Bottger taped the letter to the Eiland's front door on February 10, 2000. Mrs. Eiland found the note that day when she returned home for lunch.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of mate-

rial fact requiring judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it is essential to the proper disposition of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir.1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

### Americans with Disabilities Act

■ Defendant argues that Mr. Eiland cannot establish a prima facie case of disability discrimination. To establish his prima facie case, Mr. Eiland must "establish that: (1)[he] is a disabled person as defined by the ADA; (2)[he] is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) the employer discriminated against [him] because of

[his] disability." *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000) (*citing Taylor v. Pepsi–Cola Co.*, 196 F.3d 1106, 1109 (10th Cir.1999)). In order to meet the ADA definition of disability, Mr. Eiland must demonstrate one of the following: "(A) a physical or mental impairment that substantially limits one or more of [his] major life activities . . .; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Doyal*, 213 F.3d at 495, *citing* 42 U.S.C. § 12102(2). Mr. Eiland argues the evidence reveals questions of fact regarding each of the three. The Supreme Court has established a 3–step inquiry for resolving whether an impairment substantially limits a major life activity:

> Our consideration of subsection (A) of the definition proceeds in three steps. First, we consider whether respondent's [condition] was a physical impairment. Second, we identify the life activity upon which respondent relies . . . and determine whether it constitutes a major life activity under the ADA. Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity.

*Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). The parties are in agreement that Mr. Eiland suffers from bipolar disorder and that, as a result, he has an impairment under the ADA. The parties also agree that Mr. Eiland has identified the following as life activities that are major and are substantially limited by his impairment: his ability to think, including cognitive and rational thinking and understanding of reality; his ability to interact with and relate to others; his ability to communicate with others; and his ability to take care of himself.

Defendant argues that thinking, interacting with others, and communicating with others have never been recognized by the Tenth Circuit as major life activities.

### A. Thinking.

 Defendant argues that Mr. Eiland cannot establish thinking as a major life activity. According to Defendant, Mr. Eiland has identified no cognitive impairments and, at best, has demonstrated minor forgetfulness. In response, Mr. Eiland argues that Defendant is focusing on his medicated state rather than his functional capacity at the time he was terminated. Mr. Eiland argues he has provided evidence demonstrating that when Defendant terminated him, he was still suffering from significant impairment in his cognitive and rational thinking. The Court must consider the extent of Mr. Eiland's impairment at the time the employment decision was made and not based on how he is functioning today. *See Frazier v. Simmons*, 254 F.3d 1247, 1256 (10th Cir. 2001) (*citing Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir.1998) ("The determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision.")).[2] Defendant argues that thinking is akin to concentrating which the Tenth Circuit has held not to be a major life activity. "A 'major life activity' is a basic activity that the average person in the general population can perform with little or no difficulty." *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.1999). However, the law clearly requires the Court to consider the effect Mr. Eiland's impairment has on his ability to think. *See Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 897 (10th Cir.1997)

---

**2.** Contrary to Defendant's argument, *Sutton v. United Air Lines* does not require a different result. In that case, the plaintiffs' disabilities were mitigated at the time the employment decision was made. Here, Defendant terminated Plaintiff at a time when his disability was uncorrected and substantially limited his major life activities.

("The statutory requirement that disability determinations be made 'with respect to the individual,' contemplates an individualized, and case-by-case determination of whether a given impairment substantially limits a major life activity of the individual.") (citations omitted) *aff'd,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). When considered at the time of his termination, the degree to which Mr. Eiland's thinking was altered brings it within the ambit of a major life activity.

### B. Interacting With Others.

Defendant argues the Tenth Circuit has never held interacting with others constitutes a major life activity. Although Defendant's statement is correct, the circuit has identified the circumstances in which interacting with others could be considered a major life activity.

> We need not decide today whether this circuit will recognize interacting with others as a major life activity under the ADA, because Mr. Steele has not met the burden that would be required of plaintiffs if we were to so hold. The *McAlindin* court held that in order to demonstrate a plaintiff's major life activity of interacting with others was substantially affected, "a plaintiff must show that his 'relations with others were characterized on a regular basis by severe problems, for example, consistently high levels of hostility, social withdrawal, or failure to communicate when necessary'." *McAlindin [v. County of San Diego],* 192 F.3d [1226] at 1235 [ (9th Cir.1999) ](*quoting EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities (March 25, 1997) at 5* ). On the record before us, Mr. Steele has not made out a case that would satisfy this test.

*Steele v. Thiokol Corp.,* 241 F.3d 1248, 1255 (10th Cir.2001) (footnote omitted). When examined as it existed at the time

he was terminated, the evidence reveals substantial questions regarding Mr. Eiland's ability to properly interact with others. Mr. Eiland has presented evidence indicating he was socially withdrawn and did not communicate with others when necessary. When the evidence is viewed in the light most favorable to Mr. Eiland, it cannot be said he has failed to meet the burden identified by the circuit in *Steele.* Indeed, when considering the extent to which Mr. Eiland's ability to interact with others was impaired, the Court finds interacting with others is a major life activity under the facts of this case.

### C. Communicating With Others.

Defendant argues that no case has recognized communicating with others as a major life activity. The Court's research has likewise failed to uncover a case recognizing this activity separate from that of interacting with others. However, as noted above, Mr. Eiland has demonstrated questions of material fact regarding his ability to communicate meaningfully at that time of his termination. Accordingly, the Court finds summary judgment is improper on this point. As with interacting with others, the Court finds the degree of Mr. Eiland's impairment in this area causes his inability to communicate with others to be a major life activity.

### D. Ability to Care for Himself.

Defendant does not argue the ability to care for oneself is not a major life activity, but argues that Mr. Eiland has failed to demonstrate he is substantially limited in this area. The Tenth Circuit has recognized the ability to care for oneself is a major life activity. *See MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1444 (10th Cir.1996) ("The ADA's implementing regulations define 'major life activities' as 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing,

speaking, breathing, learning, and *working.*' *See* 29 C.F.R. § 1630.2(i)")(emphasis in original).[3] Defendant again argues that Mr. Eiland's abilities must be considered as they exist today. However, as noted earlier, the focus must be on Mr. Eiland's condition at the time of the adverse employment action. Mr. Eiland has demonstrated the existence of questions of material fact regarding his ability to care for himself at the time of his termination by Defendant.

There are clearly questions of material fact regarding whether Mr. Eiland was substantially limited in a major life function. Thus, he has satisfied the requirements under subsection A in showing he is disabled under the ADA.

Mr. Eiland also argues he was regarded as disabled by Defendant. Defendant argues that at the time it terminated Mr. Eiland it did not know he had a disability. According to Defendant, when the decision to terminate Mr. Eiland was reached the decision makers only knew that he had been absent from work for an extended period of time. Defendant argues that there is no evidence indicating it believed Mr. Eiland could not perform the tasks centrally important to most people's lives.

The regulations implementing the ADEA [sic] explain that a person is regarded as having an impairment that substantially limits a major life activity if he

(1) Has a physical or mental impairment that does not substantially limit major life activities but *is treated* by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only *as a result of the*

*attitudes* of others toward such impairment; or

(3) Has none of the impairments defined in [29 C.F.R. § 1630.2(h) ] but *is treated* by a covered entity as having a substantially limiting impairment.

*MacDonald,* 94 F.3d at 1444, *quoting* 29 C.F.R. § 1630.2(*l*)(1)-(3)(emphasis in original)(footnote omitted). Mr. Eiland has produced evidentiary materials which refute Defendant's position and satisfy the requirements set forth by *MacDonald.* Mrs. Eiland's deposition testimony indicates that as at least as early as January 19, 2000, she informed Mr. Eiland's supervisor and other co-workers that Mr. Eiland was in the psychiatric ward and she was uncertain when he would be able to return to work. Mr. Bottger testified that he was aware that Mr. Eiland had been in the psychiatric ward prior to his termination and that Mr. Eiland had been receiving treatment for a mental illness. Mr. Sanderson also testified that he was aware of Mr. Eiland's condition prior to issuing the termination letter. Mr. Eiland also submitted documents produced by Defendant evidencing Defendant's knowledge that Mr. Eiland was receiving treatment related to a mental health condition prior to making the decision to terminate his employment. Finally, the termination letter makes reference to the "uncertainty of your situation" and "this difficult time in your life" and indicates that Mr. Eiland was terminated due to his absence from work.

The Supreme Court has explained there are two ways an individual may qualify for protection under this subsection: "(1) a covered entity mistakenly believes that a person has a physical impairment

---

**3.** "It is well established that we must defer to the EEOC's regulatory definition unless it is 'arbitrary, capricious, or manifestly contrary to the statute.' " *Sutton,* 130 F.3d at 899, n. 3

(*quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual non-limiting impairment substantially limits one or more major life activities."

*Rakity v. Dillon Companies, Inc.*, 302 F.3d 1152, 1162 (10th Cir.2002) (*quoting Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). Here, there is a genuine dispute of material fact regarding whether Defendant regarded Mr. Eiland as disabled in the major life activity of working. Defendant also argues that prior to Mr. Eiland's termination there was no record that Mr. Eiland was disabled. The evidence noted above establishes a question of fact regarding this issue as well.

Defendant argues that even if Mr. Eiland has established a prima facie case, he cannot establish that he could perform the essential functions of the job, either with or without an accommodation. Defendant argues that if the evidence is viewed as of the time of his termination, it clear that Mr. Eiland could not perform the essential functions of his job because he was irrational, delusional, and unable to communicate effectively. Defendant argues that Mr. Eiland has stated that he could not attend work at the time of his termination and since regular attendance is an essential function of the job, Mr. Eiland's claim must fail. Defendant asserts that Mr. Eiland never requested an accommodation. According to Defendant, the only request was for a leave of absence for an indefinite period.

Mr. Eiland responds, arguing that Mrs. Eiland kept Defendant apprised of his treatment, the anticipated duration of his absence, and his anticipated return date. Mr. Eiland argues that in other instances Defendant has granted longer leaves of absence than he had requested. Mr. Eiland also asserts that Defendant failed to engage in the interactive process once he requested an accommodation.

As discussed above, there are questions of fact regarding what Defendant knew regarding Mr. Eiland's disability and his ability to return to work. However, it appears clear that Defendant was aware that Mr. Eiland would need some time off to stabilize his condition.

"An allowance of time for medical care or treatment may constitute a reasonable accommodation." *Rascon v. U.S. West Communications, Inc.*, 143 F.3d 1324, 1333–34 (10th Cir.1998) (*citing Hudson v. MCI Telecommunications Corp.*, 87 F.3d 1167, 1169 (10th Cir.1996)). Defendant argues that because Mr. Eiland could not offer a date for his return his claim must fail. Indeed, the Tenth Circuit has stated: "However, an indefinite unpaid leave is not a reasonable accommodation where the plaintiff fails to present evidence of the expected duration of [his] impairment." *Rascon*, 143 F.3d at 1334. However, questions of fact remain on this issue. Mrs. Eiland testified that she told Mr. Bottger that Mr. Eiland could return in a couple of weeks. In this regard, Mr. Eiland has raised an issue of fact regarding the need for an accommodation and whether Defendant engaged in the interactive process.

Defendant argues that its grounds for terminating Mr. Eiland are not discriminatory. According to Defendant, Mr. Eiland was terminated because he abandoned his job and been absent for 27 days. The evidentiary materials support the conclusion that Mr. Eiland's absence from work was due to his disability and that Defendant knew why he was absent. Mr. Eiland has offered evidence that Defendant's reason is pretextual. "In certain cases, a plaintiff's prima facie case and the inferences that may be drawn therefrom themselves cast sufficient doubt on a defendant's nondiscriminatory reason to satisfy

his burden of showing pretext." *English v. Colorado Dept. of Corrections*, 248 F.3d 1002, 1009 (10th Cir.2001) (citations omitted). Once Defendant's alleged nondiscriminatory motive is shown to be pretextual, the Court is left with the presumption of discrimination created by Mr. Eiland's prima facie case and to grant summary judgment at that time is improper. *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1241 (10th Cir.2002) (*citing Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146–49, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

■ Defendant argues that Mr. Eiland cannot recover punitive damages because the decision makers were unaware of the requirements of the ADA at the time they terminated Mr. Eiland. In response, Mr. Eiland relies on testimony of Mr. Bottger and Mr. Sanderson that they knew it was against the law to terminate someone because of a disability. Mr. Eiland also argues that Defendant had posters setting forth the requirements of the ADA on display at the office where Mr. Bottger and Mr. Sanderson worked.

Mr. Eiland has demonstrated that questions of fact exist regarding Defendant's knowledge of the law. Accordingly, summary judgment on this issue is improper.

### Intentional Infliction of Emotional Distress.

Defendant argues that Plaintiffs have failed to state a claim for intentional infliction of emotional distress ("IIED"). According to Defendant, Mr. Eiland's basis for his IIED claim is:

> Despite having received assurances from Voss that he would be 'taken care of' he learned that he had been terminated from his employment ... when his wife Cindi received a termination letter which had been posted to his door. Mr. Eiland was devastated to learn he had been terminated by his employer of 8 years and those whom he considered

friends. Mr. Eiland was forced to cope with the stress and humiliation of this termination, at the same time he was dealing with his mental illness... Mr. Eiland was forced to work several temporary jobs to ease his family's financial burden.

Defendant's Motion, p. 24. Defendant argues that Mrs. Eiland's claim for IIED is equally unavailing. According to Defendant, Mrs. Eiland asserts that she was very distraught at finding the letter and was worried and frightened about her husband's future. Defendant argues that Plaintiffs have failed to demonstrate its actions were beyond the bounds of decency. Mr. Eiland argues that the manner in which Defendant terminated him takes its actions out of the realm of an ordinary employment dispute and into the realm of an outrageous one. According to Mr. Eiland, the stress of Defendant's actions was at least one of the factors leading to a hospitalization in May of 2000 for a recurrence of his bipolar disorder. Mrs. Eiland argues that in addition to relying on the manner in which Mr. Eiland was terminated, Defendants' actions leading up to the termination give rise to an IIED claim.

■ To establish a *prima facie* case for IIED Plaintiffs must show: "(1) that the tortfeasor acted intentionally or recklessly; (2) that the tortfeasor's conduct was extreme and outrageous; (3) that plaintiff actually experienced emotional distress; and (4) that the emotional distress was severe." *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir.1991) (applying Oklahoma law). In considering IIED claims, the Court acts as a gatekeeper, making an initial determination about the validity of Plaintiffs' claims before sending them to the jury.

The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded so ex-

treme and outrageous as to permit recovery, or whether it is necessarily so. Where, under the facts before the court, reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether the conduct in any given case has been significantly extreme and outrageous to result in liability. Likewise, it is for the court to determine, in the first instance, whether based upon the evidence presented, severe emotional distress can be found. It is for the jury to determine whether, on the evidence, severe emotional distress in fact existed.

*Breeden v. League Services Corp.,* 1978 OK 27, 575 P.2d 1374, 1377–78 (footnote omitted). Here, when viewed in the light most favorable to Plaintiffs, the facts fail to demonstrate conduct sufficiently outrageous to satisfy either element of the Court's gatekeeper analysis. Although Defendant's conduct may have been callous and condemnable it does not rise to the level of extreme and outrageous. Further, Plaintiffs have not demonstrated they suffered emotional distress of the severity required by Oklahoma law. In *Zeran v. Diamond Broadcasting, Inc.,* 203 F.3d 714 (10th Cir.2000), the Tenth Circuit upheld the district court's finding of no IIED claim where the plaintiff had suffered anxiety attacks, received threatening and abusive telephone calls, sought medical care, and began taking a prescription drug for his anxiety. *Id.* at 721. Courts have repeatedly held that the suffering must be extreme or utterly intolerable in a civilized society. *See Eddy v. Brown,* 1986 OK 3, 715 P.2d 74, 77.

> [I]n order to prevent the tort of outrage from becoming a panacea for all of life's ills, recovery must be limited to distress that is severe. In other words, the distress must be of such a character that no reasonable person could be expected to endure it. Such distress is often accompanied by shock, illness, or other bodily harm, but bodily harm is not a prerequisite for demonstrating severe emotional distress.

*Daemi,* 931 F.2d at 1389 (internal citations and quotations omitted). Here, the distress allegedly suffered by Plaintiffs fails to meet the severity required to support their IIED claims.

## IV. CONCLUSION

Viewed in the light most favorable to Mr. Eiland, questions of material fact remain on Mr. Eiland's claims under the Americans with Disabilities Act. Accordingly, Defendant's Motion for Summary Judgment is DENIED as to those claims. However, the undisputed facts reveal that Defendant's conduct did not rise to the level to support a claim for intentional infliction of emotional distress. Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to those claims. A separate judgment will issue at the conclusion of this matter.